[Civ. No. 64076. Second Dist., Div. Two. Apr. 16, 1982.]

IRA SPOON et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
SIERRA TOWERS CORPORATION et al., Real Parties in Interest.

COUNSEL

Dern, Mason, Swerdlow & Floum and Greg David Derin for Petitioners.

No appearance for Respondent.

Cox, Castle & Nicholson, Lawrence Teplin, Rebecca B. Mocciaro and Robert D. Infelise for Real Parties in Interest.

OPINION

BEACH, J.—

NATURE OF CASE:

Petition by named plaintiffs in a class action for writ of mandate or prohibition or other appropriate relief to prevent discovery from unnamed class members.

We originally denied the petition. By subsequent order the Supreme Court of California directed this court "to issue an alternative writ of mandate to be heard before [this] court when the proceeding is ordered on calendar. (See *Danzig* v. *Superior Court* (1978) 87 Cal.App.3d 604, 613 [151 Cal.Rptr. 185].)" Obedient thereto, we issued our alternative writ and heard the matter.

BACKGROUND:

Petitioners are the three named plaintiffs in a class action filed on April 25, 1977 on behalf of 146 owners of condominiums sold by defendants. Petitioners alleged generally causes of action for breach of contract, fraud, and negligent misrepresentation arising out of the sales of the condominium units from defendants to plaintiffs. The alleged misrepresentations are in the nature of defendants' representations to plaintiffs of the good condition of the condominium units particularly the heating and air conditioning systems and with reference to the monthly operating maintenance expenses of the condominiums. The class was certified on May 2, 1980. The order certifying the class provided in part: "4. Defendants may assert affirmative defenses pertaining to: (A) the extent to which any class member or members were justified in relying upon any (or all) of the written documents or oral statements allegedly constituting warranties and/or representations in purchasing their units; (B) the extent to which any class member or members who were tenants at the Sierra Towers project prior to their purchasing condominium units were justified in relying upon any alleged warranties and/or representations that relate to alleged deficiencies and/or defects in the air conditioning and/or heating system in their units when they purchased their units; (C) the direct impact and/or damage caused by an alleged deficiency and/or any defect in the air conditioning and/or heating system in individual units on individual class members; (D) the effect, if any, of the release agree-

ment between Helmsley Enterprises, Inc. and Harry B. Helmsley, and the Sierra Tower Condominium Association, Inc., dated October 28, 1975, on individual class member's right to recovery."

Terms of the notice to be given were not submitted by plaintiffs until May 1981. Notice to the class members was thereafter given.

On August 21, 1981, defendants served a set of 34 written interrogatories on the 3 individual class representatives and all of the remaining but unnamed class members. By letter of October 6, 1981 counsel for defendants notified counsel for plaintiffs of defense counsel's intention to depose certain percipient witnesses, some of whom were class members. On October 30, defendants noticed the deposition of 21 individuals, 14 of whom are class members and 7 percipient or expert witnesses. Twelve of the fourteen proposed deponents are members of the board of directors of "Sierra Towers Condominium Association, Inc.," a cross-defendant in the cross-action filed by defendants. The other two are parties named Heft who were previously asserted by petitioners to occupy a particular position or situation apparently more significant than other unnamed class members.

The three class representatives answered some of the interrogatories and refused to answer others. Counsel for the named representatives objected to all interrogatories to the unnamed class members. The primary though not sole reason given was the lack of prior court order permitting interrogatories to unnamed class members. The discovery dispute was not settled (see rule 222.1, Cal. Rules of Court). On November 17, respondent court heard the following matters: (1) the defendants' motion to compel the class representatives to fully answer certain interrogatories; (2) the defendants' motion to compel the class members to fully answer each and every interrogatory; and (3) the petitioners' application for a protective order to bar the scheduled depositions. Following the hearing, the respondent court ordered the class representatives and class members to provide, without further objection, complete answers to the interrogatories. In addition, the respondent denied the petitioners' application for a protective order.

DISCUSSION:

It is well established that unnamed class members are parties for purposes of discovery (*Southern California Edison Co. v. Superior Court* (1972) 7 Cal.3d 832 [103 Cal.Rptr. 709, 500 P.2d 621]) and for

permitting interrogatories to be addressed to them. (*Danzig* v. *Superior Court, supra*, 87 Cal.App.3d 604, 611.) But additionally, language of the cases that interrogatories to class members are not allowed "as a matter of course," and that a "showing must be made," justifying such discovery (e.g., *Brennan* v. *Midwestern United Life Insurance Co.* (7th Cir. 1971) 450 F.2d 999, 1005) indicates that a court order is necessary to serve interrogatories on such unnamed members of the class. Relying on and following argument deemed by *Danzig* persuasive from federal decisions, *Danzig* lists the following rules: (1) The defendant has the burden of establishing facts justifying the discovery. (2) Only such information necessary to trial of the class issues in the case may be sought. (3) The information must be such as is not readily obtainable from other sources. (4) The interrogatories must not be unduly burdensome or promulgated for an improper purpose. *Danzig* further observes the trial court must determine that: (1) The trial of the class issues requires that absent parties furnish the information sought. (2) The information is not as to the particular amount of each class member's claim, nor the identity of the class members, since these facts are not germane to the trial of class issues. (*Danzig, supra*, 87 Cal.App.3d at p. 613.) (3) The discovery is not undertaken to harass absent class members or to decrease the size of the class.

The reason given for such restrictions on discovery in class actions is: to the extent that the class members are compelled to participate in the trial, the effectiveness of the class-action device is reduced or destroyed.

Observing the Supreme Court's directions to see page 613 of *Danzig*, it might appear to require that we order the trial court to limit discovery, in this case, whether by interrogatory or deposition so as to exclude: (1) identity of class members; (2) the extent of the individual member's damage; and, possibly (3) questions regarding "reliance" on representations. However, such result is not required at bench.

With reference to the first item, identity, the point is in this case moot. All of the individual class members are known by name and address and clearly the interrogatories do not seek the identity of the unnamed class members.

The second item concerns questions regarding damages. Under the particular circumstances at bench, it cannot be said that the trial court abused its discretion in allowing this as reasonable discovery.

While in many cases this item of information may not be relevant to the class issue (or even if relevant, the relevancy is slight and is outweighed by other considerations), here there is a relevancy which is not clearly outweighed by other considerations. To illustrate, perhaps discovery may disclose that many absent class members do not and did not claim to have any damage, because whatever amount they have paid and are paying for maintenance was or is within, or reasonably close to, amounts which they expected to pay. If the great majority of the class so answered, such information would tend to disclose no misrepresentation and no reliance and thus no cause of action for a class action on fraud or negligent misrepresentation. The legitimacy of allowing this as reasonable discovery does not depend merely on the label put on the interrogatory as relating to the "amount" of damage. The amount of damage is an incidental and unavoidably necessary part of the other legitimate part of the inquiry, i.e., whether damage has in fact been truly suffered and if so from what cause. Also, the mere fact that the named plaintiffs represent the class in asserting class causes of action including damages, misrepresentation and reliance or have answered interrogatories thereon cannot by those reasons alone always limit or preclude defendants' fair inquiry on the same issues by interrogatories to the class members. (*In re Folding Carton Antitrust Litigation* (N.D.Ill. 1979) 83 F.D.R. 260; *Eisen* v. *Carlisle & Jacqueline* (1973) 417 U.S. 156 [40 L.Ed.2d 732, 94 S.Ct. 2140].) The fact that most issues can be determined by the answers from the named plaintiffs who represent the class is insufficient. In speaking of the right of the *class* members to be informed, the court in *Eisen* said that adequate representation is not the touchstone which replaces due process rights. (*Eisen, supra.*) The court there considering the rights of the class to be informed and of the defendants to discover the identity of class members permitted the discovery of and notice to the class at plaintiff's expense. Surely fair treatment requires that defendants have equal opportunity to be informed. Where the request for answers are "not designed solely to determine the identity and amount of the class members' claims, but [are] also directed at obtaining information relating to certain defenses raised by [defendants]," the interrogatories are proper and answers may be required. (*Brennan* v. *Midwestern United Life Insurance Co., supra*, 450 F.2d 999, 1005.) At bench, as indicated, the interrogatories were related primarily to a common class issue, i.e., whether there was truly a misrepresentation or simply an unreasonable misunderstanding or misinterpretation by only a few class members. Thus, some questions, although in the seeming form of asking in part for the amount of damages, were not related "solely" to that issue.

Also, the inquiry regarding the damages may demonstrate whether the damages alleged are based upon the need for repair of defective air conditioning provided contrary to any particular agreement or warranties, or are merely upon a higher amount of preventive or regular maintenance cost than warranted, or both. If both elements are claimed by all or some, it may be that nearly all class members rely primarily on one with only a small portion of the damages attributed to the other alleged cause of action.

■ Where the issues or questions relate not simply to the amount of the class members' damage, but also to the manner in which it was incurred, the relative size of the amount of damage may help demonstrate that the claim is truly an individual claim based on unrelated or nonclass basis rather than one comprising a part of the common fund. The discovery of evidence relating to distinguishing these two areas of claim is a legitimate basis of discovery from class members. (See *Alpine Mut. Water Co. v. Superior Court* (1968) 259 Cal.App.2d 45 [66 Cal.Rptr. 250].) A possible disproportionate claim (whether too small or too large) may lead to other discoverable error or misinterpretation or misunderstanding. The question and the answer thereto does not in itself have to perfectly logically prove or disprove a factual class issue. It may be a preliminary question which bears some reasonable relation to the class issue or to other discoverable facts which in turn may be evidence which affects or may be dispositive of the class issue. This type of question might include the composition of the common fund of how and from what it is determined.

■ The questions also appear germane to the defenses allowed by the order of the trial court in its prior order dated November 18, 1980, when it certified the class in this particular case. In that order the court stated the particular defenses which defendants could assert. That order was not appealed, objected to nor tested by any petition for any writ by any of the named representative plaintiffs. The trial court specifically stated that the defendants may assert affirmative defenses to the *class issues*, those defenses pertaining to "the direct impact and/or *damage* caused by any alleged deficiency or defect in the air conditioning and/ or heating system individual units or on *individual class members*; . . ." (Italics added.) The determination of the relevancy of the interrogatory questions under the facts alleged and under the defenses allowed was for the reasons which we have set forth a matter reposed in the discretion of the trial court. Its exercise of that discretion should not be

disturbed especially by the use of an extraordinary writ unless it appears that there has been a clear abuse of that discretion.

Federal decisions do not all disallow interrogatories relating to identity of the class members and amount of damage. Nonetheless, the court in *Danzig* 87 Cal.App.3d at page 613 states: "The first and third of these issues, identity of class members and the amounts of their claims, are the very issues concerning which the federal courts agree that interrogatories to absent class members are *not* appropriate, since evidence on these issues is not germane to trial of the issues which are *common* to the class. (*United States* v. *Trucking Employers, Inc., supra*; *Bisgeier* v. *Fotomat Corporation, supra*; *Brennan* v. *Midwestern United Life Ins. Co., supra*.) California courts, too, have held that the amount of individual class member's claim is not germane to the trial of the common class issues, but should be separately proven after the common issues have been tried. (*Daar* v. *Yellow Cab Co., supra*, 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732]; *Alpine Mut. Water Co.* v. *Superior Court* (1968) 259 Cal.App.2d 45, 55 [66 Cal.Rptr. 250].)"

We have read the federal cases cited throughout *Danzig* and the California cases also cited, and we respectfully suggest that the authority cited does not entirely or unequivocally support that broad statement. We notice first that to the contrary the federal cases are not in agreement. (E.g., cf. *Wainwright* v. *Kraftco Corporation* (N.D.Ga. 1972) 54 F.R.D. 532; *Fischer* v. *Wolfinbarger* (W.D.Ky. 1971) 55 F.R.D. 129, with the language and holding of *Brennan, supra*.) Although occasionally containing dicta seemingly in support of the assertion in *Danzig* several federal cases allowed discovery by interrogatories of the individual class members. (See, e.g., *Brennan* v. *Midwestern United Life Insurance Co., supra*, 450 F.2d 999; *United States* v. *Trucking Employers, Inc.* (D.D.C. 1976) 72 F.R.D. 101.) Rather than total "agreement" substantial language in the federal cases indicates no absolute rule that an interrogatory regarding amount of damage and identity may not be submitted to absent class members. The language of *Brennan* is instructive. ▉ "While absent class members should not be required to submit to discovery *as a matter of course*, if the trial judge determines that justice to all parties requires that absent parties furnish certain information, we believe that he has the power to authorize the use of the Rules 33 and 34 discovery procedures.

"The record shows that the district judge had valid reasons from the standpoint of preparing the case for trial for ordering the discovery in this case. The requests were not designed *solely* to determine the *identity* and *amount* of the class members' claims, but were also directed at obtaining information relating to certain defenses raised by *Midwestern* in the principal trial. Counsel for the named plaintiff admitted that the information sought by *Midwestern* was relevant to its claim that it was not liable to the class. [Fn. omitted.] Moreover, movants impliedly concede that the discovery was proper by their argument that *Midwestern* could have proceeded with its pretrial discovery under Rules 30 and 31, Fed.R.Civ.P., to which the sanctions of Rule 45, Fed.R.Civ.P., are applicable. Finally, there is nothing in the record to suggest that the discovery procedures were used as a tactic to take undue advantage of the class members or as a stratagem to reduce the number of claimants."[1] (*Id.* at p. 1005, italics added.)

Significantly, *Brennan*, the only appellate federal case cited in support of the statement made by *Danzig* allowed the interrogatories to be submitted to the class members even though the interrogatories related to identity and the amount of the individual class members' claims, because the interrogatories were not solely related thereto.

Similarly, *United States* v. *Trucking Employers, Inc., supra*, after discussing the showing required, did not strike the interrogatories or questions therefrom but allowed the interrogatories to be served and answered by class members. Of the three cases cited on page 13 of *Danzig*, as indicative of the "agreement" among the federal cases, only *Bisgeier* v. *Fotomat Corporation* (N.D.Ill. 1973) 62 F.R.D. 118, held that answers to interrogatories (there asking for a large amount of irrelevant biographical information of 5,000 class members) would not be allowed. Our independent reading of the cases cited in *Danzig* as well as other cases given as authority within the cited cases reveals to us that although frequently questions of identity and damages are not permitted, on the other hand, there is hardly any established rule that federal cases are in agreement that the type of interrogatories at bench may never be submitted.

---

[1]The admission and concession by counsel add nothing to the determination of the propriety, the reasonableness, and the usefulness of the questions. The court must still weigh these against the burdens to plaintiffs and the effect on class action. This task therefore still requires exercise of discretion.

*Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d 695, and *Alpine Mut. Water Co.* v. *Superior Court, supra,* 259 Cal.App.2d 45, are correctly cited by *Danzig* at page 613 as reflecting a view that "the amount of individual class member's claim is not germane to the trial of the common issues, but should be separately proven after the common class issues have been tried." There is no quarrel with the idea that in the usual class action the common class issues can and should be tried first and then the amount of damages of each individual class member can or may be determined in a subsequent procedure or bifurcated trial. *Daar* v. *Yellow Cab Co., supra,* and *Alpine Mut. Water Co.* v. *Superior Court, supra,* are authority primarily for *that* rule. But neither case holds nor suggests that interrogatories relative to damages may not be served on class members under any circumstances.

■ Relative to the third item about which there is dispute, i.e., questions regarding reliance on the alleged representations, the court in *Danzig* stated: "Nor is it by any means clear that interrogatories directed to obtaining information concerning the reliance of absent class members on representations made by defendants are necessary to the trial of class issues. As pointed out earlier, it appears on the face of the complaint that virtually all of the alleged misrepresentations were contained in written material received by all members of the limited partnership. Thus, the questions of whether misrepresentations were in fact made, and whether, if made, they were material, can be tried without having each absent class member give evidence on those questions. Further, the California Supreme Court has held in a class action setting that an inference of reliance arises if a material false representation was made to persons whose acts thereafter were consistent with reliance on the representation. (*Occidental Land, Inc.* v. *Superior Court* (1976) 18 Cal.3d 355, 363 [134 Cal.Rptr. 388, 556 P.2d 750].) Therefore, the court in *Occidental* pointed out, justifiable reliance may be established on a common basis without the taking of evidence from each class member." (*Danzig* v. *Superior Court, supra,* 87 Cal.App.3d at p. 613.)

The inference in *Occidental* related to a matter of pleading a class action. The court held that establishing such misrepresentation to the plaintiff representatives in a pleading was sufficient to state and create a certifiable class action. But at bench we are not dealing with pleading but with the question of the right to obtain evidence of no misrepresentation and no reliance. The inference useable for pleading a class action should not be stretched to deny the procedural right to obtain proof that no true class action exists, i.e., there is a legitimate defense thereto.

An inference is only that: a rebuttable form of circumstantial evidence upon which a party has a right to produce contrary proof to totally dispell, not merely limit the extent of the inference.

Significantly, *Danzig* further states: "However, the issue of reliance is an issue common to the class and it is for the trial court to decide whether interrogatories concerning that issue, directed to absent class members, are necessary for the trial *at this time* or might better be propounded later should plaintiffs prevail." (*Danzig, supra,* 87 Cal.App.3d at p. 613; italics in original.) Again, the language discloses no hard and fast rule prohibiting such interrogatories relating to reliance but simply states that the issue can be tried without having each absent class member give evidence but does not forbid the use of such interrogatories where the trial court deems it appropriate. Nor does *Danzig* itself reach such conclusion or holding as a rule of law.

■ From the foregoing and from our reading of the statute and comparison of the cases, we conclude that a defendant in a class action has a due process statutory right to reasonable discovery. (Code Civ. Proc., § 2030.) This right cannot be totally diminished in class actions by granting a blanket immunity to unnamed class members to be free of the obligation to respond to proper interrogatories. Such interrogatories may be limited and subject to protective orders in appropriate cases. Among these protections we find that questions relative to identity and the amount of damages of the individual class members can usually be determined separately from the class action issues and most often after the class issues have been tried and determined. On the other hand, there is no hard and fast rule that absolutely prohibits interrogatories to class members containing such questions. The determination whether the questions are proper in a particular case is best left in the first instance to the discretion of the trial court.

■ At bench the class is (by class action standards) relatively small. It consists of 146 people. The individuals are not uneducated, totally ignorant and unsophisticated victims of secret overpricing. The class members here are or were purchasers of condominiums of over $100,000 each. The dispute involves separate and substantial alleged claims. The alleged cause of action is not based on the overpayment of a few cents for a taxi fare, or purchase of a bag of "Frito" corn chips, as correctly observed by the court. The inquiries can be managed and responded to with a reasonable amount of time and expense contributed by the representatives of the class. The dispute concerns alleged upkeep

expenses and costs which may or may not exist individually but in an amount sufficient to justify some reasonable involvement by the individuals. The amount of involvement is not onerous. The disputed upkeep on periodic payments is between a low of $164 to somewhere between $250 to $300. The dealings are not primarily all on a single written document or single representation but are alleged to have been by many writings, including newspaper ads and orally as well. This apparently was on a one to one basis as buyer (the class member) and seller (the defendants).

Examining the conduct of the trial court in the light of the foregoing facts and under the guides of *Danzig*, although the reasons are not set forth in the order, the transcript demonstrates that the trial court considered and explained its reasoning. (The transcript is found on page 85 of the defendant's answer to the petition (exhibit D).) The trial court read the *Danzig* opinion in open court during the hearing along with counsel. We may presume that having read *Danzig*, the court followed the proper procedure and employed the considerations to be used as announced in *Danzig*. There is no showing that the court was not aware that the burden of justification for the discovery is on defendants or that it wrongly placed the burden on plaintiffs.

Under the facts and circumstances of the case at bench, no abuse of discretion appears. The decision does not indicate that the burden was placed upon the plaintiffs to establish that they should not be required to have the class members respond.

It appears that defendants presented to the trial court reasonable bases to ask that the interrogatories be answered even though the questions appeared to touch on and in fact some individually separated questions on the amount of damages, there is no absolute rule forbidding such questions. The rule is rather that the decision whether such questions may be asked or not should remain within the discretion of the trial court to be guided by the observations of the cases which we have set forth earlier herein.

Answering the interrogatories may impose some burden on the individual class members. It may be burdensome on the named class representative plaintiffs. The process may impose some expense on the class members or on the representatives or it may require some intervention by the unnamed class members. None of these facts, however, are sufficient to prevent the use of proper discovery to which the defen-

dant is entitled. The mere fact that the representative can just as well represent all of the class issues in the class action is itself no answer to the right of discovery by interrogatories to the individual unnamed class members. (*Oppenheimer Fund, Inc.* v. *Sanders* (1978) 437 U.S. 340 [57 L.Ed.2d 253, 98 S.Ct. 2380]; *Eisen* v. *Carlisle & Jacqueline, supra,* 417 U.S. 156; *Alpine Mut. Water Co.* v. *Superior Court, supra,* 259 Cal.App.2d 45.)

■ With reference to the depositions, although such are more burdensome to the unnamed class members, at bench no request was made by defendants that a wholesale taking of all or even many unnamed class member's deposition be granted. Defendants seek the depositions of only two unnamed class members who are not board members. Even accepting that in class actions the burden shifts from the person seeking a protective order re deposition (Code Civ. Proc., § 2019, subd. (b)(1)) to the party seeking to take the deposition of a class member to show good cause, such was presented by defendants to the trial court. The two unnamed class members were shown to have been previously referred to by plaintiffs themselves in some more significant capacity in the class action than the other unnamed members, the other twelve proposed deponents are directors of the plaintiffs' association.

Although under the decisional law notice of seeking court permission to allow the serving of the interrogatories should have been first obtained, that defect was cured here by the hearing granted to plaintiffs by the trial court.

There was no clear abuse of the discretion of the trial court in its decision.

The petition is denied and the alternative writ is discharged.

Roth, P. J., and Compton, J., concurred.